IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

**MICHAEL RAY HUGHES,**

       **Plaintiff,**

v.                                                 **Case No. 3:19-cv-00606**

**CABELL COUNTY, WEST VIRGINIA;
CABELL COUNTY MAGISTRATE COURT CLERK;
WESTERN REGIONAL JAIL; and
ADMINISTRATOR, Western Regional Jail,**

       **Defendants.**

**PROPOSED FINDINGS AND RECOMMENDATIONS**

In August 2019, Plaintiff, Michael Ray Hughes ("Hughes"), proceeding *pro se* filed a Complaint pursuant to 42 U.S.C. § 1983. (ECF No. 2). Pending before the court are Defendants' Motions to Dismiss the Complaint as amended, (ECF Nos. 14, 19, 28), and Defendant Cabell County, West Virginia's Motion to Deem Their Motion to Dismiss Second Amended Complaint as Unopposed. (ECF No. 31). This matter is assigned to the Honorable Robert C. Chambers, United States District Judge, and by standing order is referred to the undersigned United States Magistrate Judge for the submission of proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B).

For the reasons set forth below, the undersigned **RECOMMENDS** that the presiding District Judge **GRANT** Defendants' Motions for Dismissal, (ECF Nos. 14, 19, 28 ); **DENY** Defendant Cabell County, West Virginia's Motion to Deem Their Motion to Dismiss Second Amended Complaint as Unopposed, (ECF No. 31); **DISMISS** the

1

complaint as amended, **with prejudice**, (ECF Nos. 2, 7, 8); and **REMOVE** this matter from the docket of the Court.

I.     **Relevant Facts and Procedural History**

In August 2019, Hughes filed a complaint pursuant to 42 U.S.C. § 1983, naming Cabell County, West Virginia as a defendant. (ECF No. 2 at 1). In the complaint, Hughes alleges that his stay in a jail located in Cabell County was improperly extended by the actions of prison and county employees. (*Id.* at 4). Hughes asserts that on August 4, 2015, he was arrested in Cabell County and placed in the Western Regional Jail and Correctional Facility ("WRJ"). (*Id.*). On August 13, 2015, Hughes went to court in Cabell County and entered into a plea agreement, which he was informed would result in his immediate release from jail. However, after returning to the WRJ, Hughes was not released. (*Id.*). Hughes informed staff at the WRJ that he should be released, but they told him the jail had not received "release papers" for Hughes, and refused his requests for assistance. (*Id.*). Hughes was eventually released on August 25, 2015, after he was able to contact his attorney. (*Id.*). Hughes states that he "spent 12 days in the [WRJ] incarcerated when I should have been released." (*Id.* at 5). Hughes requests "monetary judgment" for relief. (*Id.*).

On August 27, 2019, after conducting a preliminary review of Hughes's complaint pursuant to 28 U.S.C. § 1915(e)(2), the undersigned entered an Order advising Hughes that to state a prima facie case under § 1983, he "must show that ***a person*** was acting under color of state law and deprived [him] of a federally protected civil right, privilege, or immunity." (ECF No. 4 at 2). Hughes was given thirty days to amend his complaint and instructed to amend the complaint to include "the names of the individuals who were allegedly responsible for extending his incarceration after the date on which he should

2

have been released." (*Id.* at 3).

On September 16, 2019, Hughes filed an Amended Complaint in which he asserted that he wished to add the "Cabell County Magistrate Court Clerk" as a defendant. (ECF No. 7 at 1). On September 20, 2019, Hughes supplied a Second Amended Complaint in which he stated that he wished to add the WRJ and the Administrator of the WRJ as defendants. (ECF No. 8 at 1). In support, Hughes stated that he informed staff at the WRJ "every day" that he was supposed to be released, but the staff "ignored" his requests and "no one bothered to look into it." (*Id.*).

On October 17, 2019, the WRJ and Administrator of the WRJ, ("WRJ Defendants") submitted a Motion to Dismiss the Second Amended Complaint, and provided an accompanying memorandum. (ECF Nos. 14, 15). The WRJ Defendants argue that the complaint should be dismissed as it was filed after the relevant statute of limitations had expired. (ECF No. 15 at 4). The WRJ Defendants additionally contend that the complaint against the WRJ must be dismissed as the WRJ is both entitled to sovereign immunity and not a "person" as required to proceed under § 1983. (*Id.* at 5-6). As to the unidentified Administrator of the WRJ, the WRJ Defendants argue the claim must be dismissed as it is brought against the Administrator in his official capacity. (*Id.* at 7-8).

The WRJ Defendants further assert that Hughes has failed to state a valid cause of action as his claim that his stay in the WRJ was improperly extended does not identify a valid legal claim against the WRJ Defendants. The WRJ Defendants contend that Hughes has failed to demonstrate that he suffered any injuries as a result of his alleged improperly extended incarceration. (*Id.* at 8-9). Finally, the WRJ Defendants argue that, with respect to any claims against the Administrator in his individual capacity, these claims must be dismissed under the doctrine of qualified immunity. (*Id.* at 9-11).

On October 29, 2019, Defendant, the Cabell County Magistrate Court Clerk, ("Court Clerk") submitted a Motion to Dismiss Second Amended Complaint and provided a memorandum in support. (ECF Nos. 19, 20). The Court Clerk contends that the complaint should be dismissed as it was filed after the relevant statute of limitations had expired. (ECF No. 20 at 3). The Court Clerk additionally maintains that Hughes fails to state a plausible claim upon which relief may be granted as Hughes's complaint is "devoid of any factual contentions that support a plausible claim for relief against the [Court Clerk]." (*Id.* at 5). Finally, the Court Clerk argues that dismissal is appropriate under the qualified immunity standard. (*Id.* at 7-8).

On November 15, 2019, Hughes supplied a Response in Opposition to the pending motions to dismiss. (ECF No. 23). In the response, Hughes stated that he contacted both the Court Clerk and the WRJ requesting "paper work" related to his complaint, but did not receive a response. (*Id.* at 1). Hughes alleges that the factual assertions he has made thus far, namely that the Court Clerk failed to "send the paper work to the [WRJ]" and that the WRJ failed to respond to his requests for assistance when "one phone call could have cleared things up," sufficiently set forth a cause of action. (*Id.*). Hughes states that due to Defendants' actions, he "lost 12 days of my life that cannot be replaced." (*Id.* at 1-2). Hughes requests that "in the name of justice" this case not be dismissed. (*Id.* at 2).

On November 18, 2019, the WRJ Defendants submitted a Reply to Hughes's Response in Opposition. (ECF No. 24). The WRJ Defendants contend that Hughes's response failed to adequately dispute the multiple arguments raised in support of dismissal. (*Id.* at 1). As to Hughes's claim that WRJ staff failed to assist Hughes in his attempt to prove he was entitled to be released, the WRJ Defendants state that "the [WRJ] or its employees, have no duty to make phone calls to ensure that an inmate is due to be

4

released at any time. Release paperwork must be received from the Court directly." (*Id.*). Accordingly, the WRJ Defendants ask that Hughes's complaint be dismissed. (*Id.* at 2).

On November 22, 2019, the Court Clerk filed a Reply to Hughes's response. (ECF No. 26). The Court Clerk points out that Hughes failed to respond to a number of defenses raised in the motion to dismiss; specifically, the defenses regarding qualified immunity and the statute of limitations. (*Id.* at 1-2). The Court Clerk asserts that Hughes's "sole allegation that the Clerk failed to submit appropriate paperwork does not amount to a plausible claim for relief." (*Id.* at 4).

On December 13, 2019, Defendant, Cabell County, West Virginia ("Cabell County") submitted a Motion to Dismiss and a memorandum of law in support. (ECF Nos. 28, 29). Cabell County argues that Hughes's complaint should be dismissed as it "is devoid of any factual allegations in support of his claim against the Cabell County Commission, and does not set forth any factual or legal bases for any cognizable cause of action against the Cabell County Commission." (ECF No. 29 at 4). Cabell County further states that the complaint should be dismissed as Cabell County is not a proper party to this action, given that it does not control the WRJ. (*Id.*). Cabell County additionally claims, in conformity with all the other Defendants in this action, that the complaint is barred by operation of the statute of limitations. (*Id.* at 5).

On December 16, 2019, the undersigned entered an Order informing Hughes he had a right to respond to Cabell County's motion to dismiss, and granting him until January 13, 2020 to do so. (ECF No. 30 at 1).[1] In the Order, Hughes was warned that "ordinarily, a failure to respond within the allowed time can support a conclusion that

---

[1] The undersigned entered similar orders following the submission of the motions to dismiss filed by the other Defendants in this case. (ECF Nos. 16, 21).

Defendant's contentions are undisputed and may result in a dismissal of the complaint." (*Id.*). On February 5, 2020, Cabell County filed a motion requesting that its motion to dismiss be considered unopposed in light of Hughes's failure to file a response in the allotted time. (ECF No. 31). On February 11, 2020, the undersigned entered an Order giving Hughes until February 28, 2020 to respond to Cabell County's request. (ECF No. 32 at 1). Hughes was again warned that the failure to respond might result in the conclusion that Cabell County's contentions were undisputed and, ultimately, lead to a dismissal of his complaint. (*Id.*). Hughes did not provide a response to Cabell County's request for dismissal, or its request that its motion to be dismissed be considered unopposed.

## II. Standard of Review

A motion under Rule 12(b)(6) tests the sufficiency of the complaint. *Bell Atlantic Corp v. Twombly*, 550 U.S. 544, 570 (2007) (stating to survive a 12(b)(6) motion, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face"). Accordingly, the Court will assume that the facts alleged in the complaint are true and will draw all reasonable inferences in Hughes's favor as the nonmoving party. *Burbach Broad. Co. of Delaware v. Elkins Radio Corp.*, 278 F.3d 401, 405-06 (4th Cir. 2002). The purpose of Rule 12(b)(6) "is to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006). "Furthermore, when as here, a Rule 12(b)(6) motion is testing the sufficiency of a civil rights complaint, 'we must be especially solicitous of the wrongs alleged' and 'must not dismiss the complaint unless it appears to a certainty that the plaintiff would not be entitled to relief *under any legal theory which might plausibly be suggested by the facts*

6

alleged.'" *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999) (quoting *Harrison v. United States Postal Serv.*, 840 F.2d 1149, 1152 (4th Cir. 1988)).

While the Court "take[s] the facts in the light most favorable to the plaintiff, ... [the Court] need not accept the legal conclusions drawn from the facts," and "need not accept as true unwarranted inferences, unreasonable conclusions or arguments." *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008) (quoting *Eastern Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000)). A complaint fails to state a claim when, accepting the plaintiff's well-pleaded allegations as true and drawing all reasonable inferences, the complaint lacks "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. A pleading that "offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do" and a complaint will not "suffice if it tenders naked assertions devoid of further factual enhancements." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotations and citations omitted).

Court are required to liberally construe *pro se* complaints, such as the complaint filed herein. *Erickson v. Pardus,* 551 U.S. 89, 94 (2007). However, even under this less stringent standard, the complaint still must contain sufficient factual allegations to support a valid legal cause of action. *Bass v. E.I. Dupont de Nemours & Co.*, 324 F.3d 761, 765 (4th Cir. 2003). The Court may not rewrite the pleading to include claims that were never presented, *Parker v. Champion*, 148 F.3d 1219, 1222 (10th Cir. 1998), construct the plaintiff's legal arguments for him, *Small v. Endicott,* 998 F.2d 411, 417-18 (7th Cir. 1993), or "conjure up questions never squarely presented" to the Court. *Beaudett v. City of Hampton,* 775 F.2d 1274, 1278 (4th Cir. 1985).

### III. <u>Discussion</u>

Hughes's complaint is filed pursuant to 42 U.S.C. § 1983, which provides a remedy

to parties who are deprived of federally protected civil and constitutional rights by persons acting under color of any state "law, statute, ordinance, regulation, custom, or usage." 42 U.S.C. § 1983. Congress enacted § 1983 "to enforce provisions of the Fourteenth Amendment against those who carry a badge of authority of a state and represent it in some capacity, whether they act in accordance with their authority or misuse it." *Monroe v. Pape*, 365 U.S. 167, 171-172 (1961), *overruled on other grounds by* 436 U.S. 658.

In order to state a cause of action under § 1983, a plaintiff must present facts showing that: (1) a person deprived him or her of a federally protected civil right, privilege or immunity and (2) that the person did so under color of state law. 42 U.S.C. § 1983; *American Mfr. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49-50 (1999) ("To state a claim for relief in an action brought under § 1983, respondents must establish that they were deprived of a right secured by the Constitution or laws of the United States, and that the alleged deprivation was committed under color of state law."). If either of these elements is missing, the complaint fails to state a claim for relief under § 1983. *Sullivan,* 526 U.S. at 50.

### A. *Nature of claim raised by Hughes's complaint*

Hughes alleges that actions taken by the Defendants resulted in an unjustified 12-day extension of his incarceration. (ECF No. 2 at 4). While Defendants are correct that Hughes does not identify what provision of law, or right under the Constitution, he believes was violated by this activity, discerning the legal nature of his complaint is not exceedingly complex. Courts have long held that holding an individual in prison after he has become legally entitled to release amounts to a violation of constitutional rights. *See, e.g., Tasker v. Moore*, 738 F. Supp. 1005, 1010 (S.D.W. Va. 1990) ("It is beyond

8

peradventure that officials who willfully, intentionally or recklessly keep an inmate in prison past the date he was ordered released are liable under section 1983 for infringing upon the inmate's personal liberty protected by the substantive due process clause of the Fourteenth Amendment."); *Golson v. Dep't of Corr.*, 914 F.2d 1491 (4th Cir. 1990) ("Incarceration beyond the termination of one's sentence may state a claim under the due process clause and the eighth amendment."); *Campbell v. S.C. Dep't of Corr.*, No. CV 6:16-3265-MGL-KFM, 2019 WL 1297005, at *2 (D.S.C. Mar. 21, 2019) ("'Detention beyond the termination of a sentence could constitute cruel and unusual punishment if it is the result of deliberate indifference to the prisoner's liberty interest[.]'") (quoting *Haygood v. Younger*, 769 F.2d 1350, 1354 (9th Cir. 1985)); *Sample v. Diecks*, 885 F.2d 1099, 1108 (3d Cir. 1989) ("We think there can be no doubt that imprisonment beyond one's term constitutes punishment within the meaning of the eighth amendment."); *Davis v. Hall*, 375 F.3d 703, 712 (8th Cir. 2004) ("We have recognized a protected liberty interest in being free from wrongful, prolonged incarceration."); *Porter v. Epps*, 659 F.3d 440, 445 (5th Cir. 2011) (holding that there is a clearly established right to timely release from prison); *Cannon v. Macon Cty.*, 1 F.3d 1558, 1563 (11th Cir. 1993), *opinion modified on reh'g for other grounds,* 15 F.3d 1022 (11th Cir. 1994) ("The constitutional right to be free from continued detention after it was or should have been known that the detainee was entitled to release has been recognized in other circuits as well.") (collecting cases). Accordingly, it is evident that Hughes alleges a claim which, if proven true, could adequately set forth a claim of constitutional deprivation.

> B. *Defendant Cabell County's request to deem its motion to dismiss unopposed*

As an initial matter, the undersigned notes that Cabell County submitted a motion requesting that its motion to dismiss be deemed "unopposed." (ECF No. 31 at 3). A review

9

of the procedural history is useful in addressing this request. Prior to Cabell County entering an appearance in the instant action, the WRJ Defendants and the Court Clerk had filed dispositive motions, raising some of the same grounds later asserted by Cabell County. Hughes was told of his right to oppose the motions, and he submitted a Response in Opposition, setting out arguments in support of his desire to pursue the litigation. (ECF No. 23). Approximately one month later, on December 13, 2019, Cabell County filed its motion to dismiss. (ECF No. 28). When Hughes failed to enter a response to this motion to dismiss, Cabell County moved that the pending motion to dismiss be considered unopposed. (ECF No. 31). Hughes did not respond to the second motion filed by Cabell County either.

The United States Court of Appeals for the Fourth Circuit ("Fourth Circuit") has previously held that in cases where litigants fail to challenge motions to dismiss, district courts nevertheless have an "obligation" to review the motion and ensure that dismissal is appropriate. *See Stevenson v. City of Seat Pleasant, Md.*, 743 F.3d 411, 416 n.3 (4th Cir. 2014) ("'When deciding a 12(b)(6) motion, the mere fact that a motion to dismiss is unopposed does not relieve the district court of the obligation to examine the complaint itself to see whether it is formally sufficient to state a claim. This obligation means that a court may not automatically treat a failure to respond to a 12(b)(6) motion as a procedural default.'") (quoting *Pomerleau v. W. Springfield Pub. Sch.*, 362 F.3d 143, 145 (1st Cir.2004)). Accordingly, the failure of a plaintiff to respond to a motion to dismiss does not automatically lead to judgment in favor of the moving defendant.

Of course, the failure to respond to arguments raised in a motion to dismiss may have negative consequences for the merits of a litigant's claim. "When a plaintiff fails to oppose a motion to dismiss, a district court is 'entitled, as authorized, to rule on

the…motion and dismiss [the] suit on the uncontroverted bases asserted' in the motion." *White v. Wal Mart Stores, Inc.*, No. ELH–13–00031, 2014 WL 1369609, *2 (D. Md. Apr. 4, 2014) (quoting *Pueschel v. United States*, 369 F.3d 345, 354 (4th Cir. 2004)). Additionally, persistent failure to participate in the proceedings may result in dismissal of a case for failure to prosecute. *See e.g. Bruce v. Miller*, No. CV 3:17-1664, 2017 WL 5586271, at *2 (S.D.W. Va. Nov. 20, 2017). Nevertheless, absent a total abdication by a litigant sufficient to warrant a dismissal for failure to prosecute, district courts are still under an obligation to review the grounds presented in a motion to dismiss, and the failure to specifically respond to a motion requesting dismissal does not operate as a *per se* procedural default.

Accordingly, the undersigned **FINDS** that Cabell County's Motion to Deem Their Motion to Dismiss as Unopposed should be **DENIED** to the extent that it requests judgment against Hughes based solely on his failure to respond to Cabell County's motions.

*C. Statute of limitations*

Defendants all assert that Hughes's complaint should be dismissed as it is barred by the applicable statute of limitations. (ECF Nos. 15 at 4, 20 at 3, 29 at 5). "No federal statute of limitations specifically applies to § 1983 actions; instead, the applicable time period must be borrowed from the analogous state statute of limitations." *Rakes v. Rush*, Civil Action No. 2:09–018, 2009 WL 2392097, at *4 (S.D. W. Va. Aug. 4, 2009) (citing *Nat'l Advert. Co. v. City of Raleigh*, 947 F.2d 1158, 1161 (4th Cir. 1991)). "The Fourth Circuit has recognized that 'in the absence of any state statute of limitations specifically applicable to suits to redress a violation of civil rights, the West Virginia limitation on personal injury actions applies.'" *Hamlet v. W. Virginia*, No. CIV.A. 1:06-0181, 2009 WL

11

261450, at *3 (S.D.W. Va. Feb. 3, 2009) (quoting *McCausland v. Mason County Bd. of Ed.*, 649 F.2d 278 (4th Cir.1981), *cert. denied*, 454 U.S. 1098, (1981)). Generally, "[t]he applicable statute of limitations for an action filed pursuant to 42 U.S.C. § 1983 is based upon the State's limitations period applicable to a personal injury action.'" *Green v. Rubenstein*, 644 F. Supp. 2d 723, 746 (S.D.W. Va. 2009). In West Virginia, a two-year statute of limitations applies to personal injury cases. *Id.* (citing W. Va. Code § 55–2–12).

However, Hughes's claim that he was illegally detained by state authorities due to their failure to timely release him from prison is most analogous to the tort of false imprisonment. *See Panzica v. Corr. Corp. of Am.*, 559 F. App'x 461, 465 (6th Cir. 2014); *Burgess v. Roth*, 387 F. Supp. 1155, 1161 (E.D. Pa. 1975) ("Only an unreasonable delay in a prisoner's release will result in the tort of false imprisonment."). West Virginia specifically "prescribes a one-year statute of limitations for a claim of false imprisonment." *Searls v. W. Virginia Reg'l Jail*, No. CV 3:15-9133, 2016 WL 4698547, at *5 (S.D.W. Va. Sept. 7, 2016) (citing *Wilt v. State Auto Mut. Ins.*, 506 S.E.2d 608, 613 (W. Va. 1998)); *see also Azeez v. Keller*, No. 5:06-CV-00106, 2012 WL 13098039, at *7 (S.D.W. Va. Apr. 6, 2012) ("However, the Magistrate Judge also correctly found that West Virginia sets out a specific one-year statute of limitation for false arrest, false imprisonment, and malicious prosecution claims.") (quotation omitted).

"Although the applicable state statute of limitations supplies the length of the limitations period in a § 1983 action, the time of accrual of the cause of action is a matter of federal law." *Brooks v. City of Winston–Salem*, 85 F.3d 178, 181 (4th Cir. 1996). "[T]o determine the date of accrual for a particular § 1983 claim, a court must look to the common-law tort that is most analogous to the plaintiff's § 1983 claim and determine the date on which the limitations period for this most analogous tort claim would begin to

12

run." *Owens v. Baltimore City State's Attorneys Office*, 767 F.3d 379, 389 (4th Cir. 2014) (quoting *Wallace v. Kato*, 549 U.S. 384, 388 (2007)). For the tort of false imprisonment, "the statute of limitations begins to run when the alleged false imprisonment ends." *Wallace*, 549 U.S. at 384; *see also Owens*, 767 F.3d at 389 ("[T]he statute of limitations for false imprisonment does not begin to run at the outset of a plaintiff's false imprisonment; rather, limitations begin to run only at the end of a plaintiff's false imprisonment.") (citing *Wallace*, 549 U.S. at 389); *Panzica,* 559 F. App'x at 464 (addressing similar claim and holding that "the statute of limitations did not begin to run until [the plaintiff] was released from prison.").

Hughes alleges that he was unlawfully detained from August 13, 2015 until his release on August 25, 2015. (ECF No. 2 at 4). Accordingly, the statute of limitations on his claim began to run on August 26, 2015, following the end of his unlawful imprisonment, and expired one year later on August 25, 2016. Hughes did not submit his complaint until August 13, 2019, nearly four years after the statute of limitations began to run, and three years after it expired. (*Id.* at 7). Furthermore, Hughes has failed to address Defendants' argument that his complaint is untimely. As Hughes did not bring his claims "within the time frame prescribed by the statute of limitations, they are barred absent an excuse for [his] delay." *Morales v. Robinson*, No. CIV A 205-0509, 2007 WL 1074836, at *5 (S.D.W. Va. Apr. 6, 2007).

### D. *Excuse for delay*

Every Defendant has asserted the statute of limitations as a basis for dismissal in their respective motions to dismiss. (ECF Nos. 15 at 4, 20 at 3, 29 at 5). Hughes provided a Response in Opposition to Defendants' motions to dismiss, but did not address their argument that the complaint should be dismissed as time-barred. (ECF No. 23 at 1).

13

Hughes later declined to respond to a motion by Cabell County asking that its motion to dismiss be considered unopposed. (ECF No. 31).

"In deciding a motion to dismiss based on the statute of limitations, the Court should only grant the motion if it clearly appears on the face of the complaint that the plaintiff's claims are time-barred." *Williams*, No. 2:19-CV-00496, 2020 WL 748873, at *2 (citing *Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007)). "Generally, the statute of limitations begins to run when the tort occurs; however, under the discovery rule the statute of limitations is tolled until a claimant knows or by reasonable diligence should know of his claim." *Morales*, No. CIV A 205-0509, 2007 WL 1074836, at *5. It is evident that this rule does not alter the timeliness of Hughes's complaint, however, as he clearly was aware of the wrongfulness of his imprisonment in 2015 and should have been aware of his potential claim by the date he was released. Indeed, according to Hughes, he vigorously protested against his unlawfully extended imprisonment as it occurred. (ECF No. 23 at 1). Additionally, it is apparent from the face of the complaint, that Hughes does not allege a "continuing violation" of his rights sufficient to bypass the statute of limitations as the conduct he complains of ceased upon his release from prison. *See DePaola v. Clarke*, 884 F.3d 481, 486 (4th Cir. 2018).

Finally, Hughes does not claim, and there is nothing in his complaint which suggests, that the statute of limitations should be equitably tolled. This Court has made clear that "equitable tolling is a 'rare remedy' that can only be invoked when a plaintiff was prevented from asserting his or her claims by a defendant's wrongful conduct or when there are extraordinary circumstances beyond a plaintiff's control that made it impossible for the plaintiff to file his or her claims on time." *Bishop v. W. Virginia Reg'l Jail & Corr. Facility Auth.*, No. 2:17-CV-03064, 2018 WL 1513294, at *4 (S.D.W. Va. Mar. 26, 2018)

(quoting *Massey v. Wriston*, No. 2:13-cv-08842, 2016 WL 5172811, at *6 (S.D. W. Va. Sept. 21, 2016)). As noted, Hughes did not respond to Defendants' assertion that his complaint is barred by operation of the statute of limitations and did not provide a basis for equitable tolling to be found.

Hughes did indicate, in response to a question on the initial complaint form asking if he had attempted to contact a lawyer, that he "did not know that I could do this [submit a complaint] myself." (ECF No. 2 at 6). However, "[i]gnorance of the law does not justify tolling, even when a party does not have legal representation," and, "a party's 'misconception about the operation of the statute of limitations is neither extraordinary nor a circumstance external to [her] control.'" *Ott v. Maryland Dep't of Pub. Safety & Corr. Servs.*, 909 F.3d 655, 661 (4th Cir. 2018) (quoting *United States v. Sosa*, 364 F.3d 507, 512 (4th Cir. 2004)). Accordingly, to the extent that Hughes's statement he was previously unaware he could initiate a civil action on his own behalf is considered as an argument for equitable tolling, it does not allow him to overcome the statute of limitations.

Hughes filed this complaint nearly four years after the acts which form the basis of his claim occurred, and nearly three years after the relevant statute of limitations expired. Even if the general two-year statute of limitations were to be applied—rather than the one-year time period applicable to Hughes's claim of illegal detention—the complaint would still be untimely. Furthermore, Hughes provides no valid factual or legal basis to excuse the late filing of the complaint, and none is apparent from the record. Accordingly, the undersigned **FINDS** that the complaint should be dismissed as it is barred by the statute of limitations. As the complaint is so plainly subject to dismissal due to its untimeliness, the Court need not address the additional arguments put forth by

Defendants in favor of dismissal.

## IV. Proposal and Recommendations

For the reasons set forth above, the undersigned **RECOMMENDS** that the presiding District Judge **GRANT** Defendants' Motions for Dismissal, (ECF Nos. 14, 19, 28); **DENY** Defendant Cabell County, West Virginia's Motion to Deem Their Motion to Dismiss Second Amended Complaint as Unopposed, (ECF No. 31); **DISMISS** the complaint as amended, **with prejudice**, (ECF Nos. 2, 7, 8); and **REMOVE** this matter from the docket of the Court.

Plaintiff is notified that this "Proposed Findings and Recommendations" is hereby **FILED**, and a copy will be submitted to the Honorable Robert C. Chambers, United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, Plaintiff shall have fourteen days (filing of objections) and three days (if received by mail) from the date of filing this "Proposed Findings and Recommendations" within which to file with the Clerk of this Court, specific written objections, identifying the portions of the "Proposed Findings and Recommendations" to which objection is made and the basis of such objection. Extension of this time period may be granted by the presiding District Judge for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. *Snyder v. Ridenour*, 889 F.2d 1363 (4th Cir. 1989); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984). Copies of such objections shall be provided to the opposing parties, Judge Chambers and Magistrate Judge Eifert.

The Clerk is instructed to provide a copy of this "Proposed Findings and Recommendations" to Plaintiff, and counsel of record.

**FILED:** April 14, 2020

Cheryl A. Eifert
United States Magistrate Judge

17